IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDALL B.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

        Defendant.

Case No. 6:20-cv-00685-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

        Plaintiff Randall B. brings this action for judicial review of the Commissioner of Social Security's final decision denying his application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for the immediate payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1954, plaintiff alleges disability beginning February 19, 2014, due to back problems, arthritis, anxiety, and depression. Tr. 44–45. Plaintiff's application, dated August 30, 2016, was denied initially and upon reconsideration. Tr. 55, 70. On March 23, 2019, a hearing was held before an Administrative Law Judge ("ALJ"), wherein a non-attorney representative represented plaintiff. Tr. 30–43. A vocational expert ("VE") testified at the hearing. Id. On April 2, 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 13–24. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity during the adjudication period. Tr. 15. At step two, the ALJ determined the following impairment was medically determinable and severe: "lumbar degenerative disc disease." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved plaintiff had the residual functional capacity ("RFC") to perform sedentary work and further limited plaintiff "to no more than occasional balancing, stooping, crouching, crawling, kneeling or climbing [and he must] avoid concentrated exposure to unprotected heights, moving machinery and similar hazards." Id. At step four, the ALJ determined plaintiff could perform past relevant work as an order clerk, accounting clerk, or customer service representative. Tr. 23.

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) discrediting his subjective symptom testimony; (2) improperly discounting the medical opinions of primary care provider Leslie Stevens, D.O., and examining doctor Thomas Potter, Ph.D.; and (3) failing to include all his limitations in the RFC, thereby rendering an invalid step four finding. Pl.'s Opening Br. 4, 8, 17 (doc. 13).

**I.    Plaintiff's Testimony**

Plaintiff argues the ALJ erred by discrediting his subjective symptom testimony concerning the extent of his impairments.[2] Id. at 4. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness and instead assesses whether the claimant's subjective

---

[2] Plaintiff did not testify at the hearing, despite being present, because his non-attorney representative felt "the record was fairly well complete and well developed." Tr. 42. As such, the ALJ relied primarily on the functional report, submitted by plaintiff on October 3, 2016, in evaluating plaintiff's subjective symptom statements. Tr. 19, 202.

Page 3 – OPINION AND ORDER

symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Plaintiff stated he was unable to work due to an inability to exert himself related to his back condition and arthritis—specifically endorsing difficulty lifting, stooping, kneeling, and crouching; the inability to sit or stand for more than 15 minutes; and the need to change positions frequently. Tr. 202. Plaintiff further reported he was unable to concentrate and retain details.[3] Id.

In terms of daily activities, plaintiff disclosed that he occasionally transports his grandchildren to school and performs limited chores—such as laundry, cooking, shopping, and yard work—in short intervals and while alternating positions (and often with his wife's assistance). Tr. 203–05; see also Tr. 369, 407, 460. He indicated disruption in his sleep and daily activities due to pain, such that he needed two hour-plus long rest periods throughout the day. Tr. 203. He occasionally participated in fishing trips or similar activities, with assistance and in a more limited capacity (i.e., no sitting or standing for long periods, no walking on uneven terrain, no carrying equipment, etc.), though he noted he would "have to pay for it afterward by spending at least one day in bed recuperating." Tr. 203, 206, 209.

After summarizing plaintiff's testimony, the ALJ determined plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but found

---

[3] Plaintiff contends the ALJ erred by "not identify[ing] a single reason to support discounting [his] complaints related to difficulty concentrating, processing, and retaining information." Pl.'s Opening Br. 8 (doc. 13). At step two, the ALJ found plaintiff's mental impairments were not severe. Tr. 15. Plaintiff does not challenge the ALJ's step two finding on appeal and, as discussed in greater detail below, the mental health records do not reflect a significant impairment in functioning. Indeed, plaintiff's course of treatment and function report focus almost exclusively on his physical problems. As such, any purported error in regard to this issue was harmless.

Page 4 – OPINION AND ORDER

"the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. In particular, the ALJ found that plaintiff's self-reports were less reliable because: (1) plaintiff had a significant history of back problems "with three prior, very remote back surgeries [but] the record does not indicate these back problems interfered with his past work"; and (2) plaintiff's work history and daily activities showed that his back problems "were generally well controlled with the use of prescribed medication" and activity modification Tr. 21.

The ALJ's reasons for rejecting plaintiff's testimony regarding the extent of his functional capacities are not supported by substantial evidence. First, the ALJ weighed plaintiff's previous medication use and back surgeries—occurring in 1996, 2010, and 2012—against his work history. Tr. 19, 21. The Court notes plaintiff has a degenerative condition and that he stopped working in February 2014. Tr. 15. Under these circumstances, plaintiff's past work is less relevant. See Meier v. Astrue, 404 F. App'x 150, 151 (9th Cir. 2010) (when a plaintiff "suffers from a degenerative condition, [his] participation in activities several years ago carries less weight than does his more recent activity level"). Indeed, even the ALJ acknowledged that plaintiff was capable of only "intermittent" work between 2005 and 2012, and "since 2012 he has reported much more difficulty with prolonged sitting and standing." Tr. 21.

Moreover, the majority of the evidence from the adjudicative period is consistent with plaintiff's testimony[4] and, as such, does not support a negative credibility finding. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("claimants should not be penalized for attempting to

---

[4] The 550-plus page record contains only two isolated instances of more strenuous activities—i.e., roller skating and hanging Christmas lights. Tr. 386, 477. Plaintiff sought treatment for injuries following participation in each activity. Id. Given the overall tone and content of the record, coupled with the infrequency of these activities, they do not constitute substantial evidence.

Page 5 – OPINION AND ORDER

lead normal lives in the face of their limitations"); see also Coaty v. Colvin, 2015 WL 1137189, *4-5 (D. Or. Mar. 11, 2015), aff'd, 673 F. App'x 787 (9th Cir. 2017) ("contemporaneous self-reports to medical providers, as memorialized by their treatment notes, are the most accurate portrayal of functioning" where "there is a remote date last insured"). In particular, the record indicates plaintiff frequently struggles with daily activities and medication generally provides only limited relief. Tr. 304, 345, 385, 471, 505. Therefore, plaintiff's activities—i.e., occasionally driving and socializing, completing relatively limited daily chores with breaks, and infrequent fishing trips with assistance and accommodations for standing, sitting, and walking—are neither transferable to a work setting nor contradict claims of a totally debilitating impairment.

Furthermore, plaintiff had an MRI in May 2016 showing significant back issues including moderate and severe "[m]ultilevel degenerative disc disease," "potential nerve root irritation and/or impingement," and "severe diffuse disc bulge[s]." Tr. 293–94; see also Dahl v. Comm'r of Soc. Sec., 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (even mild degenerative disc disease can be disabling) (collecting cases). Given the severity of these findings, Dr. Stevens stated: "there are no further medical therapies which will cure or solve his back [so he must] adjust his activity level which requires unstructured days." Tr. 515. Essentially, there is nothing in the record to contravene plaintiff's self-reports concerning his need to alternate positions, pace himself and take frequent breaks, and utilize a cane or walker for mobility.

In sum, the ALJ's reasons for discounting plaintiff's subjective symptom testimony are not supported by substantial evidence in the record. The ALJ's evaluation of plaintiff's testimony is reversed.

## II.     Medical Opinion Evidence

Plaintiff asserts the ALJ wrongfully rejected the opinions of Drs. Stevens[5] and Potter. Pl.'s Opening Br. 8 (doc. 13). At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be discredited by specific and legitimate reasons, supported by substantial evidence. Id.

### A.     Dr. Stevens—Physical Assessment

Dr. Stevens became plaintiff's primary care physician in 2005 and managed his medical care through 2019. Tr. 514, 584. In May 2017, Dr. Stevens conducted a physical evaluation of plaintiff and commented:

> "[Plaintiff] is well known to me . . . He has a long history back pain and was on chronic pain medication . . . when I took over his care 2005. . . He started having difficulty with falling due to severe pain jabs as far back as 2009. His pain seemed to progressively get worse after about 2010 . . . This limits his activities of daily living including fitness, hobbies, home chores, sleep and ability to work. He reports he carefully adjusts the activity in his day so that he can get through basic activities of daily living without causing severe flares of pain. He is maintained on a combination of self care activities and medications which he reports are helpful but minimally so. The most successful self care tool he has is pacing and being able to adjust his activity level which requires unstructured days. There are no further medical therapies which will cure or solve his back pain."

Tr. 514–15.

---

[5] Dr. Stevens also appears in the record as "Leslie Ann Stevens Sorweide" and "Leslie A. Sorweide." Tr. 35.

Page 7 – OPINION AND ORDER

In March 2019, Dr. Stevens completed a "Functional Assessment of Work-Related Physical Activities." The Assessment found plaintiff can sit for less than one hour in a typical workday, must alternate positions to relieve pain or discomfort, must be allowed short breaks multiple times per hour, and may not bend to the ground. Tr. 584–86. Dr. Stevens further noted that plaintiff was a "fall risk," has "impaired endurance and mobility," and uses a cane. Tr. 587.

The ALJ afforded Dr. Stevens' physical assessment "no weight because it lacks support from the record." Tr. 22. Specifically, the ALJ asserted: (1) "there is no evidence the claimant has any problems sitting [and] his activities of daily living do not reflect this either;" (2) "[t]here is nothing in the record that indicates he has to use a cane to get around;" and (3) Dr. Stevens "merely filled out a check box form without providing any explanation for her findings." Id.

The ALJ's assessment of Dr. Stevens' opinion is not supported by substantial evidence. First, the record shows plaintiff previously expressed and was observed to have postural issues.[6] Tr. 361, 408, 515–16. As addressed in Section I, both his self-reports and daily activities, as memorialized by his contemporaneous medical records, reflect problems sitting. See, e.g., Tr. 323, 374, 407, 521. Additionally, plaintiff was instructed by his physical therapist to "avoid prolonged sitting or long car rides." Tr. 342.

Likewise, the record shows plaintiff's physical therapist recommended use of a cane or walker. Tr. 326. Plaintiff was also observed to use a cane or walker on multiple occasions—in some instances presenting with an unsteady gate. Tr. 300, 339, 341, 357, 380, 407, 463, 487.

Finally, the fact that Dr. Stevens used a check-box form is not, alone, sufficient to reject her opinion, especially given her lengthy treating relationship with plaintiff and the accompanying

---

[6] The sole reference in the record to plaintiff appearing comfortable while sitting occurred in June 2016, after he received an epidural steroid injection following the administration of 100mcg of Fentanyl. Tr. 308, 311.

Page 8 – OPINION AND ORDER

chart notes. In fact, an ALJ can only reject a check-box form where it is not based on a provider's past or current experience with the patient. See Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (ALJ erred when she "failed to recognize that the opinions expressed in [the] check-box form. . . were based on significant experience with [the claimant] and supported by numerous records").

Dr. Stevens' record shows that she actively managed plaintiff's medical care for 14 years and her check-box form is supported by previous examinations and treatment notes. Tr. 514. For instance, her statement concerning the need to alternate sitting and laying down to relieve pain or discomfort is supported by various notes throughout the record. See, e.g., Tr. 342, 383. Further, Dr. Stevens had access to objective imaging studies of plaintiff's back, which, as discussed above, showed moderate and severe neural foraminal narrowing and nerve root impingement at various levels. Tr. 294; see also Wright v. Berryhill, 2017 WL 3399855, *6-7 (D. Or. Aug. 7, 2017) (reversing the ALJ's rejection of a treating provider's opinion regarding the claimant's limitations from severe back pain where imaging studies in the record "revealed mild to moderate spinal cord compression and stenosis"). Therefore, the ALJ erred as to this issue.

  **B.** **Dr. Stevens—Mental Assessment**

In March 2019, Dr. Stevens also completed a "Functional Assessment of Work-Related Mental Activities" form, indicating plaintiff would be moderately to severely limited in understanding/remembering/carrying out detailed instructions, maintaining attention/concentration for extended periods of time, and traveling to unfamiliar places or using public transportation; and severely limited in performing activities within a schedule, maintaining regular attendance, and completing a normal work day/week without interruptions from psychologically based symptoms. Tr. 583–84.

The ALJ afforded Dr. Stevens' mental assessment no weight because she failed to demonstrate familiarity with plaintiff's mental health conditions. Tr. 22. "Dr. Sorweide's opinion provides little guidance with which to assess functional capacity. It is not persuasive because she does not treat the claimant for mental health issues [and] failed to identity any psychiatric condition the claimant might have." Id. Accordingly, the ALJ gave greater weight to the mental health specialist's opinion, Dr. Potter. Id.

A treating physician's opinion may be rejected if it "is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Similarly, inconsistency with the record or a medical provider's own treatment notes constitutes a legally sufficient reason to reject that opinion. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692–93 (9th Cir. 2009). Generally, more weight is given "to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 416.927(c)(5).

The ALJ provided legally sufficient reasons for discounting Dr. Stevens' mental health findings. However, an independent review of the record reveals Dr. Stevens managed plaintiff's mental health care—though limited to medication management—since 2013. Tr. 359–61, 394–95, 407–08, 530–31. The earlier reference in the record occurred in April 2013, when Dr. Stevens prescribed Cymbalta for plaintiff's depression, denoting "[i]f ineffective will refer to [mental health] for consult/medication recommendations." Tr. 408. In December 2013, two months before the alleged onset date, plaintiff reported the Cymbalta was managing his depression well, yet stated his anxiety was hindering him from falling asleep; however, plaintiff was reporting a number of situational stressors related to his work environment at that time. Tr. 396. Plaintiff followed-up

telephonically with Dr. Stevens a month later and noted the medications were working well but he had increased anxiety due to the loss of his father. Tr. 394.

Thereafter, there are no records related to plaintiff's mental health until December 2014, at which point plaintiff requested changes to his mental health medications due to back pain and financial/personal stressors. Tr. 369-70. In January 2015, Dr. Stevens referred plaintiff to psychiatrist Cheryl Chessick, M.D. describing plaintiff's depression/anxiety as "chronic – always present though worse since chronic pain and doesn't help [that he] had a stressful last 1-2 years with family illness/death." Tr. 360-61. Plaintiff followed up with Dr. Chessick the same month and received new medications to help manage his anxiety and depression. Tr. 357. In February 2015, plaintiff reported the medications were "working great" with no notable side effects. Tr. 355. There are no other treatment records concerning plaintiff's depression or anxiety, or documenting any mental health complaints, until February 2018, when plaintiff reported adverse side effects with his medication and requested a change. Tr. 530.

Thus, the record as it relates to plaintiff's mental health treatment, including Dr. Stevens' chart notes, are not consistent with Dr. Stevens' moderately severe and severe restrictions. Plaintiff sought mental health counseling on a single occasion during the adjudication period, and both Dr. Chessick's and Dr. Stevens' limited notes suggest plaintiff's anxiety and depression were related to his long-standing back pain and other situational stressors. In any event, these records do not reflect any significant disruption in mental functioning. Furthermore, the ALJ largely relied on the less restrictive assessment of Dr. Potter, a mental health specialist, as discussed in greater detail below.

### C.  Dr. Potter—Mental Assessment

In November 2016, Dr. Potter examined plaintiff at the request of the Oregon Department of Human Services to assist in the determination of benefit eligibility. Tr. 460. Dr. Potter specifically assessed the impacts of plaintiff's anxiety, depression, and memory issues as relating to his day-to-day functions:

> "[Plaintiff] would be able to understand simple instructions. . . [He] completes activity of daily living independently with some exceptions. [Plaintiff] describes having back pain and not being able to bend or complete task[s] below the waist. Therefore, he needs assistance to complete task[s], such as maintenance of the residence, household responsibilities, tying shoes 2–3 times a week, transfer between/from furniture 5–6 times a week, assistance walking—needing with arm support about 25% of time, and assistance with organizing medications and reminders to take them. These limitations are mostly related to physical health problems related to his back, however, difficulty managing medications may be associated with depressive functioning and reported memory loss."

Tr. 464.

The ALJ provided "partial weight [and] not . . . full weight" to Dr. Potter's evaluation "because there is insufficient evidence to support a restriction to simple instructions." Tr. 22. In particular, the ALJ noted Dr. Potter's limitation was based on plaintiff's "inability to copy interlocking pentagrams correctly [but] it is not obvious [this mistake] translates into an inability to perform work requiring him to understand more than simple instructions" and "[t]reatment notes show the claimant is capable of understanding." Id.

Here, the ALJ did not err in rejecting Dr. Potter's opinion concerning simple instructions. Throughout the record, plaintiff endorsed understanding and agreement of treatment plans including at-home care instructions. Tr. 319, 323, 327, 335, 354, 409, 488. He also indicated the ability to drive independently, shop for groceries, complete conversations and television shows, and follow written instructions if "well written." Tr. 205-07. Dr. Stevens' chart notes do not reflect any observed issues related to plaintiff's comprehension or knowledge retention. Tr. 582. Nothing

in the record suggests a limitation to simple instructions is appropriate. Therefore, the ALJ's evaluation of the mental health opinion evidence is affirmed.

### III.    RFC and Step Four Finding

Plaintiff asserts the ALJ's RFC and step four finding are erroneous because they do not adequately account for the limitations described in his testimony, or the medical opinions of Drs. Stevens and Potter.

This argument is partially well-taken. As specified above, the ALJ wrongfully discounted portions of plaintiff's and Dr. Stevens' statements. Because the ALJ failed to account for this evidence in plaintiff's RFC, the ALJ erred in relying upon the VE's testimony at step four. See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (if a VE's "hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value") (simplified). Thus, the ALJ's ultimate decision is not supported by substantial evidence and remand is necessary.

### IV.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also

Page 13 – OPINION AND ORDER

Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

In this case, the ALJ erred by failing to provide a legally sufficient reason, supported by substantial evidence, for rejecting plaintiff's testimony concerning the need to change positions and take frequent breaks. Likewise, the ALJ neglected to furnish a legally sufficient reason, supported by substantial evidence, for discrediting treating Dr. Stevens' opinion concerning plaintiff's physical impairments. In addition, an independent review of the record does not reveal any evidence that casts serious doubt on the debilitating extent of plaintiff's physical impairments. Rather, the objective medical evidence and plaintiff's self-reported activities show a severe limitation in functioning due to back pain. Nor is there any indication plaintiff's back condition, which is degenerative in nature, improved after the ALJ's decision but prior to the date last insured. See Daley v. Colvin, 2014 WL 5473797, *9 (D. Or. Oct. 28, 2014) (degenerative disc disease is a condition that, "by definition, progressively worsens over time").

Thus, the record has been fully developed and there are no outstanding issues remaining for resolution. Plaintiff was 59 years old on the alleged onset date and is currently 66, meaning that he qualified as a person of "advanced age" or "closely approaching retirement age" at all relevant times. 20 C.F.R. § 404.1563(e). He is therefore entitled to benefits under the Medical-Vocational Guidelines if he is unable to perform past work and limited to sedentary work with no transferrable skills. 20 C.F.R. § 404.1568(d)(4); 20 C.F.R. § 404, Subpart P, App'x 2, Rule 201.00, et seq. Here, the VE did not identify any transferrable skills and further testified that a hypothetical individual who was required to miss more than one day of work per month, take additional breaks, or periodically lay down throughout the day would be unable to maintain competitive employment.

Page 14 – OPINION AND ORDER

Tr. 41. As such, the Court, in its discretion, credits the improperly rejected evidence as true and finds plaintiff disabled.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for the immediate payment of benefits.

IT IS SO ORDERED.

DATED this 6th day of April, 2021.

        /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge